MARY ELIZABETH RICHMOND as Executrix, etc., Appellant,
v. THE NIAGARA FIRE INSURANCE COMPANY, Respondent.

Defendant issued to O., its general agent, an open or underwriters' policy
of insurance, which contained a condition, that if the interest of the
insured be other than the entire and sole ownership, it must be so rep-
resented to the company, and so expressed in the written part of the
policy, otherwise it would be void.  O. issued to B. & Co. two certifi-
cates of insurance, which were indorsed upon the policy, upon wheat in
their elevator ; in one, loss if any, payable to whom it may concern ; in
the other, loss payable to R.  Previous to obtaining the insurance R.
had discounted drafts, drawn by B. & Co. upon him, receiving as
security warehouse receipts of specified quantities of wheat in said
elevator.  After a loss B. & Co. assigned the certificates to R.  In
an action thereon defendant set up, as a defense, a breach of said con-
dition.  The case on appeal did not contain the evidence, but simply
stated that certain facts were proved.  There was no suggestion therein
as to whether or not any representations were made by B. & Co., as to
the nature of their interest, no request to find, and no findings upon
that subject ; the only exceptions were to the findings as made.  The
court, by whom the cause was tried, found that all the conditions of
the policy had been duly kept and performed.  The General Term
reversed the judgment on the ground that there was a breach of this
condition.  Held, error ; that it did not appear from the bill of excep-
tions, that this question was litigated upon the trial, and there was no
exception enabling the court to consider it on appeal ; that the burden
of proving a breach of the condition was upon defendant ; that if B. &
Co., when the insurance was procured, informed O. of the nature of
their interest, and he omitted to describe it in the policy, defendant
would be deemed to have waived the condition, and it could not be
assumed that this was not done.

It was claimed by defendant that B. & Co. had, prior to the insurance,
issued warehouse receipts, covering a larger quantity of wheat than
there was at the time of the insurance in the elevator, and that they had
therefore no insurable interest.  No fraud was claimed, and it appeared
that the whole insurance was less than the value of the wheat in the
elevator.  The case stated that it was proved that B. & Co. were the
owners of the wheat, and it was so found.  Held, that assuming B. & Co.
had parted with the title to the wheat by force of warehouse receipts,
before the receipts to R. were executed, they occupied at least the position
of warehousemen, and so had an insurable interest ; but that the finding
of ownership could not be questioned here.

The policy contained a provision avoiding it, in case the assured had
at the time of insurance, or thereafter made, other insurance without the
consent of the company written thereon.  There was, at the time the

insurance in question was effected, other insurance, which was not consented to in writing. It appeared that the other insurances were effected through O., and were known to him to be in existence when the insurance in question was made. *Held*, that, under the circumstances, the issuing of the insurance by O., without noting a written consent to the other insurance, was a waiver of the provision, binding upon the defendant.

*Richmond* v. *N. F. Ins. Co.* (15 Hun, 248), reversed.

(Argued November 20, 1879 ; decided December 16, 1879.)

APPEAL from order of the General Term of the Supreme Court, in the fourth judicial department, reversing a judgment in favor of plaintiff, entered upon a decision of the court on trial without a jury. (Reported below, 15 Hun, 248.)

This action was brought by plaintiff, as executrix of the will of Dean Richmond, deceased, upon two certificates of insurance issued by the underwriters' agency at Oshkosh, Wis., to Wm. M. Berry & Co. of that place, insuring them against loss by fire on wheat in the Northwestern Agency in that city.

The facts found by the court are substantially as follows :

At and prior to, May 25, 1866, William M. Berry & Co. had in their possession a building known as the Northwestern Elevator, in said city, which they used for the purpose of receiving, storing and transferring grain. At the time of effecting the insurance in question they were the owners, and had in store in said elevator, 15,811 bushels of wheat, of the aggregate value of $26,878.70. On the 14th day of June, 1864, the defendant, the Niagara Fire Insurance Company, and three other insurance corporations, each acting and contracting for itself, issued an open policy of insurance for indorsements, known as an underwriters' policy, to A. C. Osborn of said city of Oshkosh, whereby, in consideration of one-fourth part of the respective sums to be specified as premiums, and indorsed thereon, they did each insure the said Osborn for account of the respective persons therein referred to as entitled to the benefit of said policy against loss or damage by fire to the amount of one-fourth

part of the respective sums, which should be indorsed upon said policy, upon such produce and other merchandise in the vicinity of Oshkosh, as should be specified thereon, and in the certificates issued thereunder, for the benefit of the respective persons whose names should be written thereon, and to whom a certificate, authenticated by the general agent of said companies, specifying the name of the person insured, the amount and period of such insurance, the premium therefor, the goods insured and the place of their location, signed by the said Osborn, should be issued and delivered by him simultaneous with the indorsements of the risk upon such policy, in and by which they should be permitted to come in under said policy. On May 19, 1866, Berry & Co. applied to Osborn for insurance on wheat belonging to them in said elevator to the amount of $3,000 ; loss, if any, payable to whom it might concern ; and thereupon Osborn indorsed upon said policy the insurance asked for, and at the same time issued and delivered a certificate for the amount, in which certificate it was written that the loss, if any, should be payable to whom it might concern. On May 23, 1866, Berry & Co. applied to Osborn for a further insurance on $2,000 on wheat in said elevator ; loss, if any, payable to Dean Richmond ; and thereupon Osborn indorsed upon said policy of insurance the sum so applied for, and issued and delivered a certificate of insurance as so applied for. Said Richmond, on the 12th of May, 1866, loaned to Berry & Co. $3,000 ; and, as security therefor, they issued to him a warehouse receipt for wheat in said elevator, as follows :.

"NORTHWESTERN ELEVATOR,  
"OSHKOSH, *May* 12, 1866.

"Received in store from Dean Richmond, twenty-five hundred bushels of wheat, subject to the order of Dean Richmond, upon the surrender of this receipt, loss by fire and heating at owner's risk.

"2,500 bushels.

"[Signed]        WM. M. BERRY & CO."

On the 21st of May, 1866, Richmond loaned to Berry & Co. the further sum of $3,000; and, as security therefor, they issued to him a warehouse receipt for 3,000 bushels of wheat in said elevator, in all respects, except as to date and quantity, the same as that above set forth. Richmond did not, in fact, supply the wheat mentioned in the receipt, nor was there any bargain and sale of the wheat to Richmond as buyer; but it was understood and intended between Berry & Co. and Richmond that he held it as security for the money advanced. At the time the receipts were issued Berry & Co. had wheat in said elevator in excess of the amounts mentioned in the receipts issued to Richmond, which was in no manner separated from the bulk of wheat which they had in store. On the 25th of May, 1866, aforesaid, the elevator, together with the wheat contained therein, was destroyed by fire. Berry & Co., after the loss, assigned the said certificates to Richmond.

The said policy, amongst other conditions, contained the following : ' If the property be sold or transferred, or any change take place in the title or possession, whether by legal process or judicial decree, or voluntary transfer or convey-ance, * * * or if the interest of the assured, in the property, whether as owner, trustee, consignee, factor, mort-gagee, lessee, or otherwise, is not truly stated in this policy, * * * if the interest of the assured in the property be any other than the entire, unconditional, and sole ownership of the property for the use and benefit of the assured, it must be so represented to the companies, and so expressed in the written part of this policy — otherwise the policy shall be void.' In its answer, among other defenses, defendant alleged a breach of this condition.

The further facts appear in the opinion.

*A. P. Laning*, for appellant. The legal effect of the transaction between Berry & Co. and Richmond was to transfer the wheat named in the receipt to the latter in trust, as security for the payment of the money advanced by him

to them upon their draft. (*Yeuni* v. *McNamee*, 45 N. Y., 614; *Gibson* v. *Stevens*, 8 How. [U. S.], 384; *Gardiner* v. *Suydam*, 7 N. Y., 357.) Berry & Co. had an insurable interest in the property, since they held the equity of redemption subject to the pledge or mortgage, held by Richmond. (*Buffalo St. Engine Works* v. *Sun Mut. Ins. Co.*, 17 N. Y., 401; *Gordon* v. *Mass F. and M. Ins. Co.*, 2 Pick., 249; Phillips on Ins., § 287; *Grosvenor* v. *Atlantic F. Ins. Co.*, 17 N. Y., 391.) The condition as to the insurance, without written consent, was as matter of law waived. (*Van Allen* v. *F. I. S. Ins. Co.*, 4 Hun, 413; *Boehen* v. *W'msburgh City Ins. Co.*, 35 N. Y., 131; *Bodine* v. *Ex. F. Ins. Co.*, 51 id., 117; *Hayward* v. *Nat. Ins. Co.*, 52 Mo., 181; 14 Am. R., 400; *Pechner* v. *Phœnix Ins. Co.*, 65 N. Y., 195; *Dayton Ins. Co.* v. *Kelly*, 24 Ohio St., 345; *Conem* v. *H. and L. Ins. Co.*, 112 Mass., 136; *Pitney* v. *G. F. Ins. Co.*, 65 N. Y., 6.) Berry having disclosed the real interest of his firm in the wheat to defendant's agent, the fact that it was not correctly stated in the policy was not material. (*Van Schoick* v. *Ma. F. Ins. Co.*, 68 N. Y., 438; *Lyc. F. Ins. Co.* v. *Jackson*, 83 Ill., 302; 25 Am. R., 386; *Manhat. F. Ins. Co.* v. *Weill*, 28 Grat., 389; 26 Am. R., 364; *Ayrault* v. *Pacific Bk.*, 47 N. Y., 576; *Kluender* v. *Lynch*, 4 Keyes, 364; *Walsh* v. *Kelly*, 40 N. Y., 556; *Magee* v. *Badger*, 34 id., 247; *Chamberlain* v. *Pratt*, 33 id., 47; *Hunt* v. *Maybee*, 3 Seld., 273; *Groot* v. *Gile*, 51 N. Y., 431; *Jarvis* v. *Driggs*, 69 id., 143; *Vanderlip* v. *Keyser*, 68 id., 445; *Ripley* v. *Ætna Ins. Co.*, 30 id., 136; *Van Schoick* v. *Niag. F. Ins. Co.*, 68 id., 434; *Jones* v. *Osgood*, 6 id., 235; *Wheeler* v. *Billings*, 38 id., 265; *Lefler* v. *Field*, 50 Barb., 407.) If no questions were asked the insured, nor the representations required in the policy ever brought to his notice by the insurer, the policy is not avoided if the representations required by the policy were not made by the insured. (*Carter* v. *Boehin*, 3 Burr., 1905; *Clark* v. *Manfr's Ins. Co.*, 8 How. [U. S.], 249; *Tyler* v. *Ætna Ins. Co.*, 12 Wend., 507; *Col. Ins. Co.* v. *Lawrence*, 2 Pet., 25; 1

Caive's, 276; 1 J. R., 385; 11 id., 302; 9 Wend., 409; Marshall on Ins., 682–683, 730; Phillips on Ins., 64, 94; *Morrison* v. *Tenn. M. and F. Ins. Co.*, 18 Mo., 262; *Gates* v. *Madison Ins. Co.*, 1 Seld., 469; *Holmes* v. *Charlestown Ins. Co.*, 10 Met., 211, 214; 2 Harris [Pa.], 393; 18 Pick., 419; *Hartford Pro. Ins. Co.* v. *Harmer*, 2 Ohio St., 452.) The answers to the express condition, assuming that they were given in response to inquiries, were not warranties, but representations. (*Houghton* v. *Manfr's Mut. F. Ins. Co.*, 8 Met., 114; 2 Bennett's F. Ins. Cases, 346.)

*Samuel Hand* and *Spencer Clinton*, for respondent. Berry & Co. having issued warehouse receipts for more wheat than they had in the warehouse, and the receipt for which the insurance was obtained representing no proportion, the conditions of the policy were violated. (*Buff. St. Engine Works* v. *M. Ins. Co.*, 17 N. Y., 391.) Their interest not being truly stated in the policy it was void. (*Lascher* v. *N. W. Nat. Ins. Co.*, 18 Hun, 98.) The receipts given by Berry & Co. divested them of their title as owners, and they became merely bailees. (*Lucas* v. *Douiren*, 7 Taunt., 278; Laws 1858, chap. 326; *McCombie* v. *Spoder*, 1 Hun, 196; *Parshall* v. *Egert*, 54 N. Y., 18.) They were in no sense mortgagors, either with or without an equity of redemption, and having attorned as bailees to Richmond, who had possession, they had not even a leviable interest on execution. (*Parshall* v. *Egert*, 54 N. Y., 18; *Butler* v. *Miller*, 1 id., 496; *Baltes* v. *Repp*, 1 Abb. Ct. App. Dec's, 87; *Dickinson* v. *Puckhafer*, 1 Abb. N. P., 32; *Stewart* v. *Slater*, 6 Duer, 99 ; *Rogers* v. *Traders' Ins. Co.*, 6 Paige, 587.) Where a policy is made in the name of an agent to insure another named, none but the person named can prove an insurable interest. (*Russell* v. *N. Y. M. Ins. Co.*, 4 Mass., 82; *Graves* v. *Boston M. Ins. Co.*, 2 Cranch., 213.)

ANDREWS, J.   The General Term reversed the judgment of the trial court on the ground that there was a breach of the

condition in the policy which declares that "if the interest of the insured in the property be any other than the entire, unconditional and sole ownership of the property for the use and benefit of the assured, it must be so represented to the company and so expressed in the written part of this policy, otherwise the policy shall be void." The decision of the General Term proceeds upon the ground that the delivery by Berry & Co., to Richmond of the two warehouse receipts, prior to the execution of the contracts of insurance operated to divest the former of the legal title to the wheat embraced therein and to transfer it to the latter as a security in the nature of a pledge or mortgage, leaving in Berry & Co. the equitable right of redemption only on repayment to Richmond of the money advanced by him, and that the interest remaining in Berry & Co. was not therefore the entire, unconditional and sole ownership of the wheat within the meaning of the condition. This qualified interest of Berry & Co. was not expressed in the policy and the General Term in coming to the conclusion reached by it, assumes that the nature of the interest of Berry & Co. in the wheat was not represented to the insurers when the contracts of insurance were made.

It is claimed by the plaintiff that the interest of Berry & Co. in the wheat, transferred to Richmond as security merely, was an entire, unconditional and sole ownership within the meaning of the condition in question, and the case of *Manhattan Ins. Co.* v. *Weill* (28 Gratt. [Va.], 389) is cited in support of the view. But it is unnecessary to pass upon this question in this case as we are of opinion that it does not appear from the bill of exceptions that the question upon which the General Term decided the case was litigated upon the trial, or any exception taken which enables the court to consider it upon appeal. One of the defenses in the answer presents this defense. But it does not appear from the evidence, findings or exceptions, that it was alluded to on the trial. The case was tried by the court, without a jury. The judge made specific findings of fact and law. The case as settled does not contain the evidence.

in full, but recites that certain facts were proved. There is no suggestion whether or not any proof was made of representations by Berry & Co. as to the nature of their interest, no request to find upon that subject and no finding, and the only exceptions which appear in the case are to the findings of fact and law made by the court. Upon this state of the record the question upon which the court below decided the case, was not, we think, before it. It is quite consistent with the case as presented that Berry & Co. disclosed to the company when the insurance was effected the exact nature of their interest. The underwriter's policy, upon which the insurance was indorsed, does not contain any reference to or description of the interest or title of Berry & Co. in the wheat. If the insured when the insurance was procured informed Osborn, who was the general agent of the underwriters, of the nature of their interest, and he omitted to describe it in the policy but delivered the certificates to Berry & Co. without having made such entry, the companies would, in accordance with numerous authorities, be deemed to have waived the condition requiring that the interest of the assured, if not an entire, unconditional and sole owner-ship should be expressed in the policy. (*Trustees, etc.,* v. *Brooklyn Fire Ins. Co.,* 19 N. Y., 305; *Sheldon* v. *Atlantic Ins. Co.,* 26 id., 460; *Pitney* v. *Glen's Falls Ins. Co.,* 65 id., 6; *Van Schoick* v. *Niagara Ins. Co.,* 68 id., 434.) The burden of proving a breach of the condition was upon the defendant. It cannot be assumed that Berry & Co. did not correctly represent the nature of their title in the absence of any proof on the subject, and especially in view of the finding of the judge on the trial that the insured had duly kept and performed all the conditions of the policy on their part.

But other grounds are insisted upon as justifying the re-versal of the original judgment. It is claimed that Berry & Co. had no insurable interest in the wheat in the elevator. This point proceeds upon the assumption that the insured had, prior to the insurance in question, issued warehouse

receipts covering a larger amount of grain than was in the elevator when the insurance was effected, and that their title to the wheat having passed to the holders of the receipts they had no interest left, which was the subject of insurance. The defendant did not claim on the trial that there was any fraud on the part of Berry & Co. which avoided the insurance. It also appears that the whole insurance on the wheat in the elevator was less than its value. Assuming that Berry & Co. had parted with the legal title to the wheat by force of warehouse receipts issued by them before the receipts to Richmond were executed, and that the latter therefore acquired no interest in any of the wheat in the elevator by virtue of the receipts issued to him, it would not follow that Berry & Co. had no insurable interest in the property. They occupied at least the position of warehousemen, in possession of the wheat, and, as bailees, had duties in respect to the care and custody of the property, and an interest which was the subject of insurance. (1 Phillips on Insurance, § 191.) The insurance was not on wheat owned by Richmond, so that if he owned none, there would have been no insurable subject, but was on wheat in bulk, in the elevator, without any specification of the persons in whom the title was vested. But there is another answer to the objection we are now considering. There is no finding that Berry & Co. were not the owners of the wheat in the elevator when the insurance was effected. On the contrary the case states that it was proved that Berry & Co. were the owners and the finding is that they were such owners, and there is no finding that any receipts had been issued except those issued to Richmond. The defendant did not request any finding in respect to other receipts issued by Berry & Co. and, if we look into the evidence, it does not appear that the other receipts referred to related to the wheat in the elevator at the time of the insurance. But it is sufficient to say that the finding of ownership is supported by the evidence and cannot be questioned in this court, and the point that Berry & Co. had no insurable interest in the property cannot be maintained.

There was, at the time the insurance in question was effected, other insurance on the property which was not consented to in writing by the underwriters on the policy, and it is claimed that this avoids the policy, under the provision contained therein that it should be void "if the assured shall have, or shall hereafter make any other insurance on the property hereby insured, or any part thereof, without the consent of the company written hereon." It was proved and found that Osborn was the general agent at Oshkosh of the defendant and other companies which issued the open, or underwriter's policy, under which, by indorsements thereon and certificates issued, insurance was to be effected in favor of persons applying for insurance to the agent in whose name the policy was issued. It also appears that the other insurances mentioned were effected through Osborn as agent for the companies issuing the policies and were known to him to be in existence when the insurance in question was made. Under these circumstances, the issuing by Osborn of the policies sued upon without noting thereon the written consent of the defendant to the other insurance, was a plain waiver by him, binding the defendant, of the provision in question, under the authorities already cited. This case is much stronger than many of the cases where companies have been held to have waived conditions. Here the agent was the person named as the insured in the body of the open policy. It was clearly contemplated that he was to retain the custody of the instrument and create insurances in favor of third persons by issuing certificates of the fact. It was the plain duty of Osborn to have indorsed on the open policy the consent of the underwriters to the other insurance, of which he was advised, and his omission to do this was the omission of the general agent of the defendant and the other companies in whose behalf the insurance in question was made. It would be in the highest degree inequitable to permit the default of the defendant's agent, under such circumstances, to defeat a recovery in this action.

There are no other questions requiring examination. The result is that the order of the General Term should be reversed and the judgment for the plaintiff on the trial be affirmed.

All concur.

Order reversed, and judgment affirmed.