JACKSON, ex dem. EAMES, *against* PHIPPS.

*A delivery is essential to the validity of a deed, and there can be no delivery without an acceptance by the grantee. Where A., residing in this state, agreed with B, in Massachusetts, to give him a deed of his farm as a security for a debt, and A., on his return home, in 1808, executed and acknowledged a deed to B., and left it in the clerk's office on the same day, to be recorded; neither the grantee, nor any person in his behalf, being present, to receive the deed; and the grantee died in 1809, and, in 1810, A. sent the deed to the son (and heir) of the grantee; it was held that there was no delivery of the deed.*

THIS was an action of *ejectment*, to recover 25 acres of land in lot No. 24., part of *Scriba's* patent, in *Oneida* county, and also 12 acres of land adjoining, called the *Gore*. The cause was tried at the *Oneida* circuit, in *June* last, before Mr. Justice *Spencer*. Both parties claimed title to the parcel of 25 acres, under *Joseph Phipps*, who had been in possession of the premises for a number of years prior to giving the mortgage hereafter mentioned. The declaration was served on the tenant in possession the 9th of *May*, 1814.

The plaintiff gave in evidence a mortgage of the two pieces of land, dated the 17th of *March,* 1809, by *Joseph Phipps,* to the lessor of the plaintiff, to secure the payment of 53 dollars, which was recorded in the office of the clerk of *Oneida* county, the 14th of *April,* 1809.

The defendant gave in evidence a deed with warranty from *Joseph Phipps,* to his brother, *Aaron Phipps,* the father of the defendant, for 44 acres and a half of land, which included the 25 acres, but not the 12 acres in question; this deed was dated, acknowledged, and recorded, the 27th of *January,* 1809.

The defendant offered to prove, by his attorney, that the tenant in possession, on the 6th of *April,* 1814, verbally agreed with him, to hold possession of the 12 acres under the defendant, on a promise to sell to the tenant. This evidence was objected to, but admitted by the judge. It did not appear, however, that the defendant, who resided in *Massachusetts,* knew of, or consented to, this attornment.

It was proved that *Joseph Phipps,* being in embarrassed circumstances, in the fall of the year 1808, went to his brother, *Aaron Phipps,* who resided at *Hollistown,* in *Massachusetts,* and agreed to give him a deed of his farm, to secure two notes of about 130 dollars, with the interest, and a small debt due to the defendant. *Joseph Phipps,* accordingly, returned home, and executed and acknowledged the deed of the 27th of *January,* 1809, and left it in the clerk's office. Neither the grantee, nor any person in his behalf, was present. *Aaron Phipps,* the grantee, died in the fall of 1809, never having been in this state. In *February,* 1810, *Joseph Phipps* sent the deed, enclosed in a letter, to *Eli Phipps,* the defendant, who, on receiving it, appeared to be surprised; but, on reading the letter, observed, that it was intended to secure the two notes which the said *Joseph* owed to the grantee, and which the defendant said he then held, as administrator of his father, uncancelled, and that he was disappointed in not receiving the money instead of the deed.

It appeared that *Joseph Phipps* continued to occupy the premises for about three years after the date of the deed to *Aaron Phipps,* and then delivered the whole to the defendant, who let them to the tenant in possession. The premises were proved to be worth about 700 dollars.

NEW-YORK,
Oct. 1815.

JACKSON
v.
PHIPPS.

*Joseph Phipps* testified, that when he executed the deed to his brother, he informed him, by letter, of a mortgage to one *Wager*, for about 300 dollars, and another mortgage to the state, on part of the premises, for about 60 dollars; and it was proved that the defendant had paid off those two mortgages.

A verdict was taken for the plaintiff, subject to the opinion of the court on the above case.

*N. Williams*, for the plaintiff, contended, 1. That the deed from *Joseph Phipps* to *Aaron Phipps* was never delivered to the grantee, and, therefore, void, for want of a delivery. A delivery is essential to give effect to a deed.* It must be delivered to the party, or his attorney, unless where it is delivered to a third person as an *escrow.* There must be an acceptance of the deed by the grantee.†

2. The deed is fraudulent and void, as against creditors. The grantor was insolvent when he executed the deed to his brother, who never saw the land; it is an absolute deed, when the parties intended it merely as security. A mortgagee is a *bona fide* purchaser, and is protected by the third section of the act‡ against such a fraudulent conveyance.

*Sill*, contra. The deed having been executed pursuant to a previous agreement between the parties, and left at a public office, to be recorded, must be deemed to have been delivered. It is enough that the grantee had notice of the execution of the deed, and of its being left at the office. The good sense of the rule as to delivery is, that the grantor should manifest his intention that the property should pass by the deed, and that the grantee should accept of the transfer; and as the conveyance is for his benefit, his acceptance is always presumed.

As to the allegation of fraud. The fact of the grantor being insolvent, at the time of executing the deed, does not, of itself, make it void; it is his selling or conveying the property to a person not a creditor. If he conveys it to a creditor, it is no fraud. A preference of one creditor to another is not fraudulent;§ nor is the possession of real property, after sale, with the consent of the grantee or creditor, evidence of a fraud.‖

As to the 12 acres, or *Gore*, they are not included in any patent, and, therefore, belong to the people of the state.

* 2 Bl. Com.
306, 307. Shep.
Touch. 57, 58.

† Jackson v.
Dunlap, 1 Johns.
Cas. 114.

‡ 1 N. R. L 75.
sess. 10. ch. 44.
27 Eliz. c. 4.
3d Eliz. c. 18.
Comp. 279. 2 Bl.
Com. 296.

§ 3 Johns. Rep.
71. 5 Johns.
Rep. 335. 412.
‖ Jackson v.
Brownell, 3
Caines, 222.

SPENCER, J., delivered the opinion of the court. The parties both claim title, under *Joseph Phipps*, to the 25 acre tract. The other tract is described as a *Gore;* and is included in the mortgage given by *Joseph Phipps* to the lessor of the plaintiff, but is not included in the deed from *Joseph Phipps* to *Aaron Phipps*. With respect to the piece called the Gore, there can be no question. The defendant defends as landlord of the premises, and his only pretence to any title to this part of the premises, arises from his having succeeded to the possession under *Joseph Phipps*. The mortgage to the lessor of the plaintiff comprehending it, and the defendant having no title paramount to the mortgage, there exists no legal defence for this tract.

The date of the deed under which the defendant claims, being prior to the execution of the mortgage under which the plaintiff claims the premises, the former must prevail, if it be well and legally executed.

The objection to it is, that it never was delivered to the grantee, nor to any one, for his use, during his lifetime ; and the facts are, that, in the fall of 1808, it was agreed, between *Joseph* and *Aaron Phipps*, that the former, who was indebted to the latter, should give him a deed of his farm, to secure the debt; that *Joseph* executed the deed, acknowledged and carried it to the clerk's office, for recording, on the day of its date, without the grantee, or any person on his behalf, being present, or receiving a delivery of the same; that *Aaron*, the grantee, died in the fall of 1809, and in *February*, 1810, the defendant received the said deed, as the son, and, probably, heir, of *Aaron.*

Under these circumstances, the deed must be considered inoperative. It is requisite, in every well-made deed, that there be a delivery of it. This delivery must be either actual, by doing something and saying nothing, or else verbal, by saying something and doing nothing ; or it may be by both ; but by one or both of these it must be made; for, otherwise, though it be never so well sealed and written, yet is the deed of no force. It may be delivered to the party himself, to whom it is made, or to any other person, by sufficient authority from him, or it may be delivered to a stranger, for, and in behalf, and to the use of him to whom it is made, without authority ; but if it be delivered to a stranger, without any such declaration, unless it be delivered as an *escrow,* it seems that it is not a sufficient

NEW-YORK,
Oct. 1815.

delivery. (1 *Shep. Touch.* 57, 58. 2 *Black. Com.* 307. 4 *Viner*, 27. s. 52.). In *Jackson*, ex dem. *M'Crea*, v. *Dunlap*, (1 *Johns. Cas.* 114.,) it was decided, that it was essential to the legal operation of a deed that the grantee assents to receive, and that there could be no delivery without an acceptance.

A delivery of a deed, which, we have seen, is essential to its existence and operation, *ex vi termini*, imports that there be a recipient. It would be absurd to hold that a thing was delivered, when there was no person to receive; and, in this case, the grantee died without any delivery to him. Without inquiring, therefore, whether the deed was fraudulent, it is enough that it was never well executed, by delivery.

Judgment for the plaintiff.